(No. 46071.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GLENN HICKMAN *et al.,* Appellants.

*Opinion filed November 18, 1974.*

Thomas A. Hett, of Chicago (Serpico, Stamos, Novelle, Dvorak, Navigato and Hett, Ltd., of counsel), for appellants.

William J. Scott, Attorney General, of Springfield, and Martin Rudman, State's Attorney, of Joliet, for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

A Will County circuit court jury found defendants Glenn Hickman and Anthony Rock guilty of murder, burglary and criminal damage to property. A co-defendant, Robert Papes, was convicted of burglary and criminal damage to property. Thereafter the trial court entered an order arresting the judgment of murder against Hickman and Rock on the ground that in the circumstances present here the defendants could not be held liable, under the felony-murder doctrine, for the death of a police officer shot by a fellow officer during the course of police pursuit of the defendants, who were fleeing the scene of a burglary committed by them. For the offense of burglary, Hickman was sentenced to two years' probation conditioned on a nine-month term of imprisonment at the State penal farm. Rock was sentenced to imprisonment for a year to a year and one day, and Papes was sentenced to two years' probation conditioned on a six-month term at the penal farm. The State appealed the arrest of judgment on the murder verdict and the Appellate Court for the Third District reversed (*People v. Hickman,* 12 Ill. App. 3d 412). That court, pursuant to Supreme Court Rule 316 (50 Ill.2d R. 316), granted a certificate of importance on motion of defendants Hickman and Rock.

There is no dispute as to the facts, and the sole issue presented is whether the fleeing perpetrators of a forcible felony are guilty of murder when a pursuing police officer is mistakenly shot and killed by a fellow officer also in

pursuit of the fleeing felons.

On the evening of April 2, 1970, a number of members of the Joliet police force were conducting a surveillance of a liquor warehouse under the direction of Sergeant James Cronk. Between 8:30 and 9:30 p.m., Rock and Papes were observed by Sergeant Cronk and other officers driving around the immediate vicinity of the warehouse in a Cadillac automobile. A Chevrolet automobile later entered an alley adjacent to and south of the warehouse. Two persons left the car and disappeared into a doorway of the warehouse, while Papes, the driver of this auto, looked around the area. Papes then re-entered the auto and drove it down the alley out of sight. He then walked back to the warehouse and entered a side doorway. Almost immediately three persons came out of that doorway, and Sergeant Cronk signaled the officers to close in. On seeing the police, Papes, Rock and Hickman fled. Papes ran in a southwesterly direction and was immediately apprehended. He had in his hip pocket a loaded .32-caliber pistol and a box of shells. Rock and Hickman ran across a parking lot toward bushes in the northwest corner of the lot. Sergeant Erwin, who had apprehended Papes, turned his attention to the other two felons and was prepared to fire at Rock, who carried a small object in his hand, but elected to fire a warning shot in the air when Detective Loscheider came into view pursuing Rock. At the same time, Sergeant Cronk, from a vantage point at the rear of the warehouse, observed Papes being taken into custody but lost sight of the two individuals he had seen fleeing across the parking lot. Almost immediately thereafter he observed a crouched figure carrying a handgun running towards the northwest corner of the lot. Sergeant Cronk shouted "drop it," and, when the person did not comply, fired his shotgun. The running, crouched figure proved to have been Detective Loscheider, who was killed by this shot from Sergeant Cronk's gun. Detective Loscheider, with weapon drawn, had apparently been pursuing

Rock and Hickman to the point where they had gone through the bushes when he was mistaken by Sergeant Cronk for one of the burglars.

Later that evening defendants Rock and Hickman were arrested as they walked down a street some 2½ blocks from the warehouse and near a restaurant owned by Hickman. Neither was armed when arrested. Investigation disclosed that entry to the warehouse had been accomplished by removing a panel and a lock from the side door, and tool marks on the door were matched to a screwdriver found in an attache case carried by Hickman during the escape and later found in the parking lot. Other physical evidence, the automobiles involved and identifications by police officers linked all three defendants with the crime. The record discloses no evidence that either Rock or Hickman was armed.

Defendants urge that they cannot be found guilty of felony murder under these facts, because the death of Detective Loscheider was the result of a justifiable and lawful act by another police officer who was not acting in concert with the defendants nor in furtherance of their conduct. Defendants contend that in order for the felony-murder rule to be applicable, the fatal act must be done in furtherance of the forcible felony, and it must have been done by one of the co-felons. Here the death resulted from the act of a person intervening in opposition to the felony. While this narrow interpretation is arguable, based on the wording of the felony-murder statute, it is not, in our opinion, correct.

Our felony-murder statute reads as follows:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: ***
>
>> (3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1971, ch. 38, par. 9—1(a)(3).)

The committee comments to that section state:

"It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant \*\*\* or even by a third person trying to prevent the commission of the felony. People v. Payne, 359 Ill. 246, 194 N.E. 539 (1935)." S.H.A., ch. 38, sec. 9—1, at 9 (1972).

In *People v. Payne,* 359 Ill. 246, armed robbers approached the home of two brothers. One of the brothers fired a revolver attempting to prevent the robbery, and one of the robbers also fired. The second brother was killed by the gunfire, but it could not be determined whether his brother or the robber fired the fatal shot. The court affirmed the murder conviction of a conspirator who was not even present at the scene, reasoning that "It might reasonably be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder. [Citation.]" 359 Ill. at 255.

This court has recently re-examined the holding of *Payne* and considered its import in relation to section 9—1 of the Criminal Code of 1961, concluding that it was the intent of those who drafted the felony-murder statute to incorporate therein the holding in *Payne.* We reached this conclusion in *People v. Allen,* 56 Ill.2d 536, affirming the murder conviction of a conspirator in a proposed armored-truck robbery for the slaying of a police officer. There, too, defendant argued that the shot which caused the death of the officer had been fired by another police officer. We ruled, however, that "the defendant in this case may be held liable for the death of Officer Singleton whether the fatal shot was fired by a co-felon in the furtherance of the attempted robbery or by another police officer in opposition to the attempted robbery." (56 Ill.2d at 545.) The facts in *Allen* established that the conspirators decided to leave the scene because the armored truck had not arrived. Police vehicles blocked their departure,

the conspirators began firing, and the police returned the fire. While a jury instruction in *Allen* seemed to indicate that only if the conspirators fired the initial shot and the police retaliated could defendant be held legally responsible for the death of the officer, our holding rejected that limitation.

Here defendants planned and committed a burglary, which is a forcible felony under Illinois law. (Ill. Rev. Stat. 1971, ch. 38, par. 2–8.) One of them was armed. It was their conduct which occasioned the presence of the police. When confronted by approaching officers, the defendants elected to flee. We have previously held that the period of time and activities involved in escaping to a place of safety are part of the crime itself. (*People v. Golson,* 32 Ill.2d 398.) The defendants were repeatedly told to halt and the police identified themselves, but the defendants continued their attempt to escape. The commission of the burglary, coupled with the election by defendants to flee, set in motion the pursuit by armed police officers. The shot which killed Detective Loscheider was a shot fired in opposition to the escape of the fleeing burglars, and it was a direct and foreseeable consequence of defendants' actions. The escape here had the same effect as did the gunfire in *Allen,* in that it invited retaliation, opposition and pursuit. Those who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape. As we indicated in a recent felony-murder case, "It is unimportant that the defendant did not anticipate the precise sequence of events that followed upon his entry into the apartment of Judy Tolbert. His unlawful acts precipitated those events, and he is responsible for the consequences." *People v. Smith,* 56 Ill.2d 328, 333-334.

We are aware that other jurisdictions have determined that a felon is not responsible, under the felony-murder rule, for the lethal acts of a nonfelon, with certain exceptions such as when the defendant starts a gun battle,

or where a felon uses an innocent victim as a shield for escape. (See *Taylor v. Superior Court of Alameda County* (1970), 3 Cal. 3d 578, 477 P.2d 131, 91 Cal. Rptr. 275; *Commonwealth ex rel. Smith v. Myers* (1968), 438 Pa. 218, 261 A.2d 550.) Our statutory and case law, however, dictate a different, and we believe preferable, result. In the circumstances present here, it is clear the jury was correct in its determination that defendants Rock and Hickman were directly responsible for the death of Detective Loscheider and guilty of his murder. The appellate court correctly interpreted the felony-murder statute and the *Payne* case in reversing the arrest of judgment even without the benefit of our recent opinion in *People v. Allen,* 56 Ill.2d 536. We accordingly affirm the judgment of the appellate court and remand the cause to the trial court for further proceedings consistent with this opinion.

*Affirmed and remanded,*
*with directions.*